IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KENNETH GREGORY STEPHENS,
as Special Administrator for the Estate
of Joshua Allen Stephens PLAINTIFF

v. Civil No. 4:24-cv-04134-SGS

WARDEN JOHN MINERS;
DEPUTY WARDEN SHAUNDA SCOGGINS;
OFFICER CHATMAN; MAJOR VICKEY WALKER;
and TINA HODGE[1] DEFENDANTS

**ORDER**

Joshua Allen Stephens originally filed this 42 U.S.C. § 1983 action and *in forma pauperis* ("IFP") application *pro se* on December 30, 2024. (ECF No. 1-2). This Court granted Joshua Allen Stephens IFP status on the same day. (ECF No. 3). An Amended Complaint was filed on January 30, 2025. (ECF No. 8). On May 22, 2025, a Suggestion of Death was filed by Defendants stating Plaintiff died on March 30, 2025. (ECF No. 22). On July 28, 2025, Kenneth Gregory Stephens, as Special Administrator for the Estate of Joshua Allen Stephens moved to substitute for Joshua Allen Stephens as Plaintiff in this matter. (ECF No. 25). The Court granted such Motion on September 5, 2025. (ECF No. 26). The case was then administratively stayed until Plaintiff could secure representation. (ECF No. 40). Plaintiff did so and the case was reopened on March 31, 2026. (ECF No. 42). Currently before the Court is Defendants' Motion for Summary

[1] The Clerk is directed to amend Defendant Officer Chapman to Officer Arundrell Chatman as spelled in his Declaration in support of the instant Motion for Summary Judgment. (ECF No. 29-1). The Court will refer to the proper spelling offered in that Declaration herein.

Judgment on the sole issue of exhaustion. (ECF No. 29). Plaintiff responded. (ECF No. 45). Defendants replied. (ECF No. 48). After consideration, the Court determines there is an issue of fact as to whether Mr. Stephens properly exhausted his administrative remedies, or whether the grievance procedure was available to him to exhaust. Accordingly, the Motion for Summary Judgment based on a claim of failure to exhaust is DENIED.[2]

## I. BACKGROUND

As the original plaintiff and substituted plaintiff in this matter have the same surname, the Court will refer to Joshua Allen Stephens, the original *pro se* plaintiff, as "Mr. Stephens," and Dr. Kenneth Gregory Stephens, Special Administrator for the Estate of Joshua Allen Stephens and father of the original plaintiff, as "Plaintiff."

Mr. Stephens filed his original Complaint on December 30, 2024, using the Court approved Section 1983 Complaint Form. (ECF No. 1). In this Original Complaint, Mr. Stephens swore the facts alleged were true and correct under penalty of perjury pursuant to 18 U.S.C. § 1621. (ECF No. 1). Mr. Stephens filed his Amended Complaint on January 30, 2025. (ECF No. 8). This Amended Complaint included only some pages of the Court approved Section 1983 Complaint Form along with additional pages of notebook paper which Mr. Stephens expounded upon his claims and factual allegations against the Defendants. However, Mr. Stephens did not include the signature page from the Complaint form or his original Complaint. Meaning, Mr. Stephens factual statements in his Amended Complaint were not independently verified under penalty of perjury as those in his original Complaint.[3] (ECF No. 8). However, as Mr. Stephens proceeded *pro se* when

[2] On April 22, 2025, the parties consented to have a Magistrate Judge conduct all proceedings in this case including a jury or nonjury trial and to order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 21).

[3] Plaintiff executed his Amended Complaint, but not under penalty of perjury. (ECF No. 8, p. 28).

filing both his Original Complaint and Amended Complaints, the Court will proceed by reading the two complaints together for purposes of this Motion for Summary Judgment on the issue of exhaustion. *See Kirr v. North Dakota Public Health*, 651 F.App'x 567 (8th Cir. 2016) (concluding that *pro se* plaintiff's original complaint and two amendments "should have been read together" as constituting his complaint); *Cooper v. Schriro,* 189 F.3d 781, 783 (8th Cir. 1999) (*per curiam*) (*pro se* complaint must be liberally construed and plaintiff clearly intended for amended complaint to be read together with original complaint). Finally, most of the facts relevant to exhaustion that were alleged in Mr. Stephen's Amended Complaint, were also alleged in his Original Complaint. (ECF Nos. 1, 8). Accordingly, the Court will consider Mr. Stephens's Original and Amended Complaints together. The Court will cite to both Complaints when appropriate.

In this Amended Complaint, Mr. Stephens named as Defendants: (1) John Miners, Warden and Center Supervisor of the Southwest Arkansas Community Corrections Center ("SWACC"); (2) Shaunda Scoggins, Deputy Warden of SWACC; (3) Mr. Chatman, Administrative Resource Officer at SWACC; (4) Vicky Walker, Major at SWACC; and (5) Tina Hodge, Staff on Duty and Therapeutic Community Services at SWACC. (ECF No. 8, pp. 2-3). Mr. Stephens asserts many Eighth Amendment claims against all of the Defendants regarding his conditions of confinement at SWACC including exposure to black mold, asbestos, pepper spray, a cockroach infestation, improper strip searches, contaminated food sources, leaking roof, and lack of exercise and showering in segregation. Additionally, Mr. Stephens alleges Fourteenth Amendment Due Process violations regarding his discipline while housed at SWACC. Finally, Mr. Stephens alleged First Amendment claims for retaliation and denial of the grievance procedure at SWACC. (ECF No. 8). The Court finds it unnecessary for the purposes of the instant Motion to enumerate the substance of all of Plaintiff's voluminous claims in detail here. Instead, the Court will enumerate

those facts alleged and sworn by Plaintiff in his Complaints that are pertinent to the issue of exhaustion pursuant to the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).

First, in response to the prompt on the Section 1983 Complaint form regarding exhaustion that Plaintiff used in filing both his Original and Amended Complaint, Plaintiff stated he did attempt to exhaust his administrative remedies. Then he explained in detail:

> I used the State *grievance/complaint* procedures to no avail. I received no response back on any of the issues I am facing. This option was rendered unavailable because officers constantly unwilling to provide any relief. The attempts of staff to thwart me from taking advantage of the grievance process were blatant. I put multiple *grievances* in the only box on the compound only to be told they had no record of their submission. The idea all of my *grievances* were lost or vanished is a direct misrepresentation of the facts . . .

(ECF Nos. 1, p. 1; 8, p. 1) (emphasis added).

In his Original Complaint, Mr. Stephens also states he suffered: "Retaliation for filing *complaints* by administration and staff on a repetitive bases. Threats of physical abuse for attempting to redress *grievances* by resource officer." (ECF No. 1, p. 4) (emphasis added). Mr. Stephens goes on to make specific allegations against Defendant Chatman for claiming he never received the grievances Mr. Stephens filed, requiring Mr. Steven to refile complaints and grievances, refusing to provide Mr. Stephens with grievance acknowledgement forms, and intimidating Mr. Stephens. (ECF No. 1, p.5).

Then in asserting his claims against Defendant Chatman in his Amended Complaint, Mr. Stephens claims a First Amendment violation through retaliation and specifically states:

> I received unequal treatment and purposeful discrimination for my filing of *complaints & grievances*. Chatman inhibited my ability to redress confinement issues by blatantly ignoring my requests as well as falsely claiming he had no record of a multitude of *grievances*; presumably using the paper-only system to his advantage to claim there was no record of filing and that he did not receive them. Chatman interfered with my constitutional right to address these issues by asking me multiple times to keep filing these *complaints & grievances* to no avail – attempting to "slow-walk" the process. When I reminded him of his job duties (to

> provide me a grievance acknowledgement form within (5) five working days) he began to threaten me with physical harm as well as frustrate & hinder my filing or addressing *grievances*. He also intimidated me by claiming I had to fill these forms out in his office, away from any witnesses who might help me. When I questioned this, [Chatman] claimed this was the State's Directive – which was another egregious misrepresentation and intimidation tactic to thwart my efforts continuously. Threats were doled out by Mr. [Chatman] in connection with my inquiries about *grievances* I had filed, he had "lost" and I had refiled at his request. This pattern persists, ultimately disabling my ability to exhaust my administrative remedies . . . .

(ECF No. 8, pp. 5-6) (emphasis added).

Further, in his Original Complaint, Plaintiff attached a document titled "Arkansas Community Correction COMPLAINT FORM FOR RESIDENTS." (ECF No. 1, p. 9). This document is dated December 4, 2024, signed by Mr. Stephens, and properly notarized. *Id.* In this Complaint Form, Mr. Stephens states:

> The Administrative Resource Officer, Mr. [Chatman], tries to harass & intimidate residents into not getting *complaint forms & especially Grievance Forms.* Not only that, there have been more than a few times (3 or 4) where important documents including *appeals, complaints & grievances* have come up missing with no explanation whatsoever.
>
> By Mr. [Chatman's] own admission he asked me to not put anything in the box & give it to him in a hand-to-hand transaction to make sure he gets it. However, when I attempted to do just this, he "shooed" me away with his hands & wouldn't open the door, as if he couldn't be bothered one way or another. Ultimately, not being able to hand a form or paper to him and-to-hand is <u>NO</u> <u>EXCUSE</u> for the apparent loss of paperwork. Putting these forms in the ARO box should suffice just like putting regular mail in the mailbox. The sender should be able to expect whatever he puts in the box to be mailed, or if not, documented as to why & given the whereabouts of his paper/mail. There is absolutely no justifiable excuse for the spontaneous degeneration of these documents, especially with no explanation as to why this is the case. I am not the only resident this has happened to & I probably won't be the last if this pattern of practice persists. The ARO is intended to be helpful intermediary to assist residents and facilitate certain forms – NOT try & find a way to withhold the forms from you. Upon asking for these forms (which technically should be available in the Law Library & from any officer), one has to explain their reasoning for needing a form, only for the ARO to weigh, in his opinion, whether their reason merits giving them a complaint or grievance. It's not his job to dole these forms out based on his partial pinion of it qualifying as grievable.

*Id.* (emphasis in original) (emphasis added) (errors in original).

In his Original Complaint, Mr. Stephens alleges Defendant Hodge retaliated against him for filing "complaints & grievances on her." (ECF No. 1, p. 6). In his Amended Complaint, Mr. Stephens elaborated about his retaliation claim against Defendant Hodge, in pertinent part, Mr. Stephens states:

> . . . I have been harassed by her from this point forward due to the grievances I filed on her (which I had to submit three separate times to prevent it from mysteriously disappearing). I have been harassed by Mrs. Hodge with threats such as that she will get my time in confinement extended. She has also promised to administratively amend my eligible release (423) date. The unsubstantiated stripping of my job, privileges and due process all arose from the complaints and grievances I submitted on SOD Hodge. The incidents I'm referring to would have never taken place except for a retaliatory motive due to exercising the grievance process. Additionally, SOD Hodge and ARO [Chatman] colluded together to collectively ignore my requests and complaints under the direction of SOD Hodge, who was the ARO before Mr. [Chatman] . . . I put a *complaint form* on her. When no response came, I submitted another *complaint*. After the *second complaint* SOD Hodge placed me on restriction from all my earned privileges for an indeterminate period. She also came up to the residential barracks in which I reside and verbally commented about the complaints I lodged against her – stating that if I had a problem I could drop a request to have an interview with her. This was a lie, considering I had already done this. Because of these facts, I then filed a *grievance* on SOD Hodge for unnecessary retaliation, due to my previous job with her not panning out because of her false & dishonest assessment which as turned into the cause for her stripping all of my privileges – without a hearing or an ability to rebut or appeal her fallacious acts. Since I lodge a *grievance* on SOD Hodge, Def. Miners received adequate notice of his subordinates actions . . . I received no *grievance acknowledgement* or response from Warden Miners or Depurty Warden Scoggins . . . [who knew] I was under the Constitutional risk . . . all with no recourse, given the complete lack of response to institutional communication forms, i.e., *Residential Requests to interview, Residential Complaint forms, and Residential Grievance forms.* Defendant Miners is the direct individual who is supposed to receive and deal with the grievance forms. I waited for an acknowledgement to no avail. I waited for a response from anybody and ultimately received nothing. After two (2) months of waiting, I concluded I would not receive a response. . ..

(ECF No. 8, pp. 7 – 10) (emphasis added).

In his conditions of confinement claims against Defendants Miners and Walker, Mr.

Stephens states he made two "complaints regarding the safety conditions and was ignored." (ECF No. 8, p. 12). He also states his "complaints" about the conditions were "disregarded or generally unresponded to." (ECF No. 8, p. 13). Specifically, regarding his claim on the pepper spray against Defendant Walker, Plaintiff stated: "I placed a complaint on the Major for this (paper complaint) (no other remedy available) to which I received absolutely nothing back from." (ECF No. 8, p. 19).

In Mr. Stephens Original Complaint, he alleges Defendant Scoggins and Miners "thwarted me from taking advantage of the grievance process." (ECF No. 1, p. 7). In his Amended Complaint, Mr. Stephens claims Defendant Scoggins and Miners:

> Removed all *complaint and grievance* forms from the Law Library against their own facility's directives. They also intentionally misrepresented to their staff the ability to dole out these forms. Deputy Warden and Warden effectively thwarted me from taking advantage of the grievance process . . . knowingly ignoring all my *complaints and grievances*. Additionally, two complaints and one grievance were filed by me about not being able to have a meaningful opportunity to exercise for going on five (5) months . . . Lastly, all but a couple of *complaints and grievances* have been identified as unseen. The other myriad *complaints and grievances* are claimed to be lost or degenerated. With no database for these *complaints*, this systemic violation will continue unless an injunction takes place.

(ECF No. 8, pp. 22-23) (emphasis added).

Finally, Mr. Stephens attached a letter to his Amended Complaint, on which his signature is notarized. In this letter he states:

> Also, complaints & grievances about this issue have been ignored.
> . . .
> However, residents are threatened & harassed by the grievance officers instead. This practice is virtually disallowing residents to submit any *complaints or grievances* in regards to policy, conditions, incidents, or actions related to their confinement. The grievance officer regularly uses intimidation as a means to not supply the proper documents needed to file *complaints/grievance*. Lastly, if one of these forms does end up in the Resource Officer's mailbox, many times it simply disappears without cause or explanation. With no paper trail, it's as if no one addressed any issues at all.

> . . .
> The disappearance of complaint and grievance forms as well as the blatant intimidation regarding the possession thereof is a consistent pattern of suppression that will persist unless there is some direct form of intervention.

(ECF No. 8, pp. 24-26) (emphasis added).

In their Motion for Summary Judgment on the sole issue of exhaustion, Defendants argue Mr. Stephens failed to exhaust any of his alleged claims as he failed to file any grievances while at SWACC during the time at issue. (ECF No. 30, p. 5). Defendants support this argument with: (1) Defendant Chatman's Declaration (ECF No. 29-1); (2) the Arkansas Community of Corrections Resident Grievance and Appeal Process (29-2); and (3) Mr. Stephens's Inmate Grievances Log (ECF No. 29-3).

In his Declaration, Defendant Chatman stated that he is employed by the Arkansas Department of Corrections, Division of Community Correction ("DCC") as the Administrative Review Officer. (ECF No. 29-1, p. 1). His duties include screening complaints & grievances, entering grievances into eOMIS, and acting as the liaison between the residents and grievance appeals officials through the grievance process. *Id.* Defendant Chatman attached the relevant Grievance Procedure in place at SWACC during the time at issue here to his Declaration, and he represents it is a true and correct copy of such procedure. *Id.*

The DCC Resident Grievance and Appeal Process (hereinafter "Grievance Procedure") reads as follows:

**B. Grievance Procedure in General**

1. The resident grievance procedure is an administrative means for the resolution of complaints that pertain to the administration and operation of the facility or alleged acts by ACC employees. Complaints pertaining to treatment sanctions or "learning experiences" cannot be grieved. The grievance procedure is designed to supplement, but not replace, the informal communication process.

2. The grievance procedure must be posted on the employee and resident bulletin boards, and in the facility law library. Residents and employees must be given written notification of the grievance procedure upon arrival at the center.

3. Residents who have difficulty understanding the grievance procedure must be informed to contact a designated staff member for further explanation and/or assistance.

4. All residents are entitled to use the grievance procedure regardless of their security or job classification, disciplinary status, or administrative or legislative decisions affecting the resident. This procedure must also be accessible to impaired, handicapped, and non-English speaking residents.

5. Residents follow local procedures for submitting the informal "Complaint Form for Residents." Residents may file grievances by dropping a completed grievance form in the locked grievance boxes, which are located in accessible places throughout the centers.

6. In the case of an emergency grievance or a grievance alleging sexual abuse, a resident may give the grievance to any officer or employee of the center, who must follow the procedures set forth in this policy. Residents are NOT required to use the informal "Complaint Form for Residents" or have a preliminary discussion with staff when filing an emergency grievance or a grievance alleging sexual abuse.

7. Time limits for responding may be extended only in 5 business day increments to complete investigative work. Residents must receive written notice of such extension prior to the expiration of the 30 calendar day time period in which the Center Supervisor or Deputy Director of Residential Services must respond (see Form 5). Expiration of the time limit at any stage of the process may be considered by the grievant to be a denial and this entitles the grievant to move to the next level of the process, unless the grievant has received written notice of an extension. Once a resident initiates the grievance process, processing of the grievance must occur without interference or influence by administrators or any employee of the center.

## C. Routine Grievance Process

Routine grievances must be processed as follows:

### 1. Step One

a. A resident must first attempt to informally resolve complaints, grievances, problems, or incidents by submitting a "Complaint Form for Residents" or discussing the matter with an appropriate person such as a counselor, the Residential Supervisor assigned to his/her housing area, or the Shift Supervisor on duty. Note: This step is NOT required for emergency grievances and allegations of sexual abuse; refer to information below for these situations.

b. If the problem has not been resolved informally or no response has been received to the informal complaint, the resident may submit a formal written grievance within 5 days of the occurrence to the Grievance Officer or the Center Supervisor's Designee (Designee) on a "Grievance Form for Residents" (see Form 2) Note: here is NO time limit for filing a grievance about sexual abuse. At this point, the grievance becomes formal and all aspects of the process must be followed.

c. The law library must have these forms for resident use: "Complaint Form for Residents" and "Grievance Form for Residents."

d. The resident may receive any assistance necessary in completing the "Grievance Form for Residents" without unreasonable delay, by contacting the Grievance Officer or Designee.

e. Residents cannot file a grievance on behalf of another resident (see the exception for allegations of sexual abuse).

f. The Grievance Officer or Designee must transmit a Grievance Acknowledgement Form (obtained from e-OMIS) to the grievant within five working days after receipt.

g. Emergency situations:

(1) A grievant may declare an emergency situation if he/she believes that by observing the regular time limits for processing he/she would be subject to a substantial risk of personal injury or other serious and irreparable harm to include a substantial risk of imminent sexual abuse.

(2) A grievant may indicate the existence of an emergency by marking the box provided on the Grievance Form, and by filing the Grievance Form in the usual manner or by personally delivering it to any officer or employee of the center, who must sign the attached Emergency Receipt, give the receipt to the resident, and deliver the Grievance Form without undue delay to the Grievance Officer or Designee, or in his/her absence, to the highest center authority present.

h. The Grievance Officer or Designee must within 30 calendar days respond in writing to the grievant, unless the time period to respond has been extended.

i. All written responses must include a well-reasoned response and an explanation that the grievant is entitled to appeal and instructions on how to appeal.

**2. Step Two**

a. Any grievance decision can be appealed to the Center Supervisor through the normal chain of command. The grievant is entitled to appeal the Center Supervisor's decision within 5 days after receipt of the Center Supervisor's decision by using the Resident Appeal Form (see the back of Form 3).

b. Within 30 calendar days, the Deputy Director of Residential Services must review the initial grievance, the Center Supervisor's investigation and response, and the resident's appeal, and if necessary, conduct a separate investigation of the matter and respond to the grievant in writing. The Deputy Director of Residential Services must provide a copy of his/her decision to the appropriate Center Supervisor for filing and notification purposes.

c. The decision of the Deputy Director of Residential Services is final.

. . .

**H. Records**

**1. Nature.** The Grievance Officer must maintain a log containing pertinent information regarding the filing, acknowledgement, and disposition of grievances. The Grievance Officer or Designee must maintain the official individual file for each grievance, which is to contain all pertinent information regarding the grievance, and which must systematically maintain aggregate information regarding the numbers, types, and dispositions. Such records must be preserved for at least 3 years following final disposition of the grievance.

**2. Confidentiality.** Records regarding the participation of an individual in the grievance proceedings must not be available to residents and department personnel, other than those directly involved in the grievance process, unless the person's job requires access to such records. Grievance records must be marked confidential and will not be available to non-departmental personnel other than those allowed by policy. Entries concerning the above must not be recorded in the resident's jacket. Records of testimony or evidence regarding a resident's participation in a grievance proceeding must also be held confidential.

(ECF No. 29-2).

Also, the forms listed as available in the procedure are:

**IV. FORMS**

AD 15-08 Form 1 Complaint Form for Residents
AD 15-08 Form 2 Grievance Form for Residents
AD 15-08 Form 3 Center Supervisor's Decision, Resident's Appeal
AD 15-08 Form 4 Deputy Director's Decision
AD 15-08 Form 5 Resident Grievance Extension

*Id.*

Defendant Chatman also asserts in his Affidavit:

> I have reviewed my grievance files regarding former inmate, Joshua Stephens. Specifically, I have reviewed inmate Stephens's grievance history from June 12, 2024, through the date this lawsuit was filed on December 30, 2024. During my review of Stephens's grievance history, I searched for any exhausted grievances filed from June 12, 2024, through December 30, 2024, that pertained to Stephens's claims in the present lawsuit against myself, and DCC Defendants John Miners, Shaunda Scoggins, Vicky Walker, and Tina Hodge.
>
> During my review, I found that Mr. Stephens did not submit, appeal, or otherwise exhaust any grievances while housed at the [SWACC], including emergency grievances.
>
> Ultimately, because Mr. Stephens did not file any grievances prior to filing this lawsuit, he failed to exhaust his administrative remedies against the DCC Defendants.

(ECF No. 29-1, pp. 3-4).

The Inmate Grievance Log Defendant Chatman attached to his Affidavit indicates that no grievances filed by Plaintiff were found during his incarceration at SWACC. (ECF No. 29-3).

In Plaintiff's Response, he argues Mr. Stephens did in fact file multiple grievances on the issues he alleges in his Complaints, and if those issues were not exhausted it was due to the prevention of or interference with exhaustion by Defendants. (ECF No. 47). In support of these arguments, Plaintiff submitted: (1) the Affidavit of Plaintiff (ECF No. 54-1); (2) a sworn Complaint Form for Residents, Mr. Stephens sent to the Warden of SWACC (ECF No. 45-2); (3) the Affidavit of Shou Carter, an employee of SWACC (ECF No. 45-3); and (4) the Affidavit

of former inmate Dallas Duncan, who was housed at SWACC at the same time as Mr. Stephens (ECF No. 45-4).

In his Affidavit, Plaintiff states, in pertinent part:[4] (1) Plaintiff is a retired lawyer and the father of Mr. Stephens; (2) Mr. Stephens asked for Plaintiff's advice, while Mr. Stephens was incarcerated at SWACC, on how to prove he filed a complaint if Defendants were discarding all of his filed complaints and refusing to give him copies; (3) Plaintiff advised Mr. Stephens to demand a copy upon filing and then advised him to file a grievance for the Defendants discarding complaints; (4) Plaintiff then advised Mr. Stephens to use the SWACC notary to notarize a complaint form addressed to the Warden and have her make a copy for him. (ECF No. 45-1).

The notarized Complaint Form for Residents submitted by Plaintiff is the same document

---

[4] The majority of Plaintiff's Affidavit testimony is inadmissible hearsay and thus cannot be considered by the Court on Defendants' Motion for Summary Judgment. Defendants argue the Affidavit is offered to dispute the fact Plaintiff failed to file any grievances and attempts to prove this by offering statements made by Mr. Stephens to Plaintiff in phone conversations while Mr. Stephens was incarcerated in SWACC. Plaintiff was never incarcerated in SWACC with Mr. Stephens, so it is undisputed that Plaintiff has no first-hand knowledge of any events that took place inside SWACC during Mr. Stephens's incarceration.

Rule 56 states affidavits may be considered on summary judgment if the affidavits are: "made on personal knowledge" and "set out facts that would be admissible in evidence . . . ." Fed. R. Civ. P. 56(c). However, when an affidavit contains an out-of-court statement offered to prove the truth of the statement that is inadmissible hearsay. Such a statement may not be used to support or defeat a motion for summary judgment. *Brooks v. Tri-Systems, Inc.,* 425 F.3d 1109, 1111 (8th Cir. 2005). Plaintiff argues, however, that his statements in his Affidavit fall under the exception in Federal Rule of Evidence 801 for questions. Plaintiff is correct that his Affidavit testimony regarding what Mr. Stephens asked him is not hearsay because the question is not offered for its truth, or because Mr. Stephens's question was not intended as an assertion. *See e.g., United States v. Wilson,* 665 825, 830 (8th Cir. 1981) (a corrections officer's testimony about what questions law enforcement asked an inmate were "not hearsay because the remarks were not offered to prove the truth of the matter asserted"). However, Plaintiff's Affidavit testimony recounting all of Mr. Stephens statements regarding the attempts he made to file grievances and his belief that Defendants thwarted those attempts is in fact hearsay as those statements are being offered for the truth of the matter asserted. For this reason, the Court has only enumerated that testimony from Plaintiff's Affidavit which is considerable by the Court here.

attached to Mr. Stephens's Original Complaint. (ECF Nos. 1, p. 9; 45-2). This Complaint Form is attached to a Resident Request Form which is addressed to Defendant Miners from Mr. Stephens. In this form, Mr. Stephens states:

> I am attaching a complaint form to this request. My complaints and grievances have disappeared multiple times with no explanation. I am now putting in a complaint on the ARO for his actions. I am having to do it this way to prevent this complaint from disappearing as well, as I have the right to believe it may. This is my feeble attempt at documenting where this paper goes; otherwise, I have no recourse. Thank you for understanding.

*Id.* The Resident Request Form is also signed by Mr. Stephens and notarized on December 11, 2024. *Id.*

The Affidavit of Mr. Carter concerns maintenance issues at the SWACC facility and does not address the grievance procedures at SWACC. (ECF No. 45-3). Therefore, the Court does not find it relevant for the current issue before it.

Dallas Duncan, an inmate incarcerated in the SWACC with Mr. Stephens, avers in his Affidavit that he experienced similar problems with the SWACC Grievance Procedure as complained of by Mr. Stephens in his Original and Amended Complaints. (ECF No. 45-4).

In their Reply, Defendants again argue Plaintiff has failed to produce any evidence that Mr. Stephens exhausted the SWACC Grievance Procedure as required by the PLRA. In support of this Reply, Defendants submit: (1) Defendant Chatman's supplemental Declaration (ECF No. 48-1); (2) Defendant Hodge's Declaration (ECF No. 48-2); (3) Defendant Walker's Declaration (ECF No. 48-3); (4) Defendant Scoggins's Declaration (ECF No. 48-4); (5) Defendant Miners's Declaration (ECF No. 48-5).

In his supplemental Declaration, Defendant Chatman testifies that the Inmate Grievance Log for Mr. Stephens attached to Defendants Motion for Summary Judgment is a true and correct copy of Mr. Stephens's grievance history. Defendant Chatman explains that the history does not

account for informal complaints, but only formal grievances submitted on the "Grievance Form for Residents." Pursuant to the SWACC Grievance Procedures, if an inmate is not satisfied with the outcome of an informal complaint, he may pursue the matter by filing a written formal grievance. Defendant Chatman's reference in his first Declaration was to these formal grievances. Defendant Chatman further testifies that according to Mr. Stephens's grievance history, he did not submit, appeal, or exhaust any formal grievances while incarcerated at SWACC. Finally, Defendant Chatman testifies that he did not engage in any actions to prevent Mr. Stephens from participating in the SWACC Grievance Procedure. (ECF No. 48-1).

All of the other Defendants' Declarations state the same exact relevant testimony: "I have never engaged in any actions to prevent Joshua Stephens from participating in the grievance procedure." (ECF Nos. 48-2 – 48-5).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607. "A case founded

on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. at 610. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

The PLRA mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle,* 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court explained that "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The *Jones* Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. Finally, in the Eighth Circuit, exhaustion is an affirmative defense, and the defendant has the burden of pleading and proving the failure to exhaust. *See Nerness v. Johnson,* 401 F.3d 874, 876 (8th Cir. 2005).

Here, the SWACC Grievance Procedure, included in the Background section above, is undisputed. (ECF No. 29-2). Additionally, it is undisputed that an informal complaint on a "Complaint Form for Residents" must first be filed by a SWACC inmate to resolve any issues.

Then, if the issue is not resolved informally, or no response is received on the informal complaint, the SWACC resident must submit a formal written grievance on a "Grievance Form for Residents" within five days of the occurrence to the Grievance Officer. *Id.* Finally, Defendants do not dispute that Mr. Stephens filed informal complaints while incarcerated in SWACC.

The dispute arises in whether or not Mr. Stephens submitted any formal grievances in compliance with this SWACC grievance procedure. Plaintiff asserts that Mr. Stephens filed multiple formal grievances on the issues complained about in the Original and Amended Complaints. In support of this contention, Plaintiff submits his own affidavit in which he testifies Mr. Stephens sought Plaintiff's legal advice on how to obtain a copy of complaints and grievances filed when such copies were being denied (ECF No. 45-1), as well as a copy of the notarized Complaint Form for Residents and Request Form completed by Mr. Stephens and sent to Defendant Miners, (ECF No. 45-2). On the contrary, Defendants assert Mr. Stephens failed to file a single formal grievance appropriately during his incarceration at SWACC. In support of this contention, Defendants produced an empty Inmate Grievance Log, (ECF No. 29-3), purporting to show Plaintiff did not file a single grievance during the time in issue, and Declarations from each Defendant testifying they did not prevent Mr. Stephens from participating in the SWACC Grievance Procedure, (ECF Nos. 48-1 – 48-5).

The Court does not find Plaintiff's Affidavit sufficient to create an issue of fact as to whether Mr. Stephens filed any formal grievances on the issues complained of in his Original and Amended Complaints. Without considering Plaintiff's hearsay statements, Plaintiff's Affidavit has not met proof with proof in the face of Defendants' proffered Inmate Grievance Log and Declarations. Furthermore, there is no exception known to the Court to allow hearsay statements on summary judgment because one of the parties is deceased. *Mays v. Rhodes,* 255 F.3d 644 (8th

Cir. 2001) (declining to consider hearsay statements in affidavits of witnesses to the death of an inmate offered on summary judgment).

However, the Court may consider Mr. Stephens's verified statements made in his Original Complaint for purposes of summary judgment. *See, e.g., Roberson v. Hayti Police Dep't.* 241 F.3d 992, 994-95 (8th Cir. 2001). The *Roberson* Court explained: "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion." *Id.* As enumerated in detail in the Background Section above, Plaintiff states in his verified Original Complaint that he filed both "complaints and grievances" and that Defendants thwarted his efforts to utilize the SWACC grievance procedure. Specifically, the Court emphasized in the Background section each instance where Mr. Stephens alleges he filed a "grievance." Furthermore, the Court specifically considers Mr. Stephens verified statement in both his Original and Amended Complaint stating he put multiple "grievances" in the only box on the compound but was told no records of any such grievances could be found. (ECF Nos. 1, p. 1; 8, p. 1). Also, the Court considers Plaintiff's notarized statement, attached to his verified Original Complaint as a Complaint and Request Form sent to Defendant Miners: (1) "The Administrative Resource Officer, Mr. [Chatman], tries to harass & intimidate residents into not getting complaint forms & especially Grievance Forms;" and (2) "My complaints and grievances have disappeared multiple times with no explanation." (ECF No. 1, pp. 9, 11).

Here, Plaintiff's version of events is not blatantly contradicted by the record. If Defendant Chatman never accepted any of Mr. Stephens formal grievances, as alleged by Mr. Stephens, it makes sense that Mr. Stephens's Inmate Grievance Log would be empty. Here, this record simply contains conflicting testimony. *Cf. Scott v. Harris*, 550 U.S. 372, 380 (2007). At this stage, the

Court cannot weigh evidence or determine credibility. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (explaining the court must draw all reasonable inferences in favor of the nonmoving party and may not make credibility determinations or weigh the evidence as those are jury functions). Therefore, it finds a genuine issue of material facts exists as to whether Mr. Stephens filed formal grievances pursuant to the SWACC Grievance Procedure.

Moreover, the Court is unconvinced by Defendants' argument in their Reply regarding the difference in an informal complaint and a formal grievance at SWACC. As explained, the Court finds there is an issue of fact as to whether Mr. Stephens attempted to file formal grievances during the time in issue. It is also clear to the Court, from Mr. Stephens factual allegations in his Original and Amended Complaints that he understood the distinction between an informal complaint and a formal grievance pursuant to the SWACC Grievance Procedure. In his Amended Complaint, Plaintiff references the different forms available for inmates by title including "Resident Requests to interview," "residential Complaint forms;" and "Residential Grievance Form," (ECF No. 8, p. 9), and he specifically states that when his filed "complaints" against Defendant Hodge did not produce a response, he filed a "grievance," (ECF No. 8, p. 8). Additionally, Plaintiff references "complaints and grievances" multiple times throughout both his Original and Amended Complaints and used these terms in a way that is clear he was referring to two different types of filings. (ECF No. 1, 8). Accordingly, the Court finds Mr. Stephens's statements in his Original and Amended Complaints also create an issue of fact as to whether Mr. Stephens filed both informal complaints and formal grievances pursuant to the SWACC grievance procedure.

Additionally, while exhaustion pursuant to the PLRA is mandatory, Plaintiff is only required to exhaust those administrative remedies which are "available" to him. *See Ross v. Blake*, 578 U.S. 632, 639 (2016). In *Ross,* the Supreme Court enumerated three instances where plaintiffs

are excused from exhaustion of administrative remedies as "unavailable" pursuant to the PLRA: (1) when the procedure operates as a "dead end" because the officers are unable or unwilling to provide relief to the inmate; (2) the grievance procedure is so opaque as to become "incapable of use;" and (3) when prison officials prevent a prisoner from utilizing the procedure through "machination, misrepresentation, or intimidation." *Id.* at 643-44. Mr. Stephens specifically alleges Defendant Chatman thwarted his efforts to exhaust his administrative remedies through specific factual allegations, i.e. disposing of filed complaints and grievances without response, intimidation, and retaliation for filing complaints and grievances. (ECF Nos. 1, 8). Again, the Court recognizes the Defendants' testimony in their Declarations that they did not prevent Mr. Stephens from utilizing the SWACC grievance procedure. (ECF Nos. 48-1 – 48-5). However, at this stage the Court cannot make credibility determinations between conflicting testimony on summary judgment. *See Reeves,* 530 U.S. at 150. If Mr. Stephens verified statements in Original Complaint and attachments are accepted as true, this would establish that the SWACC Grievance Procedure was not available to Mr. Stephens. *See Townsend v. Murphy,* 898 F.3d 780, 783-4 (8th Cir. 2018) (holding an officer misleading an inmate into believing he should not file a formal grievance until receiving a response on his informal complaint, even though this was not the process under the applicable grievance procedure, rendered the grievance procedure unavailable to the inmate).

Accordingly, the Court finds there is a genuine issue of material fact as to whether the grievance procedure at SWACC was available to Mr. Stephens and whether Mr. Stephens filed any formal grievances pursuant to SWACC Grievance Procedure.[5]

## IV. CONCLUSION

For these reasons, Defendants' Motion for Summary Judgment (ECF No. 29) is **DENIED**. Defendants may reassert the affirmative defense of exhaustion at trial if this matter survives summary judgment on the merits.

**IT IS SO ORDERED this 15th day of September 2026.**

/s/ *Spencer G. Singleton*
HON. SPENCER G. SINGLETON
UNITED STATES MAGISTRATE JUDGE

[5] As the Court finds there are issues of facts related the issue of exhaustion it need not reach Plaintiff's *Perttu v. Richards,* 605 U.S. 460 (2025) argument at this time. If the affirmative defense of exhaustion is raised again at trial, the Plaintiff may reassert this argument.